# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

In the matter of the search of:

The premises located at:
**27805 S. 170 Rd., Henryetta, OK 74437**
**Okmulgee County**
**Eastern District of Oklahoma**

Case No.   25-MJ-56-GLJ

## APPLICATION FOR SEARCH WARRANT

I, Lucas Keck, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the **EASTERN** District of **OKLAHOMA** *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section(s) 922(g)(3), and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Lucas Keck*
LUCAS KECK
ATF Special Agent

*[signature]*
*Judge's signature*
 GERALD L. JACKSON
**UNITED STATES MAGISTRATE JUDGE**
*Printed name and title*

Sworn to:

Date:   February 21, 2025

City and state:   Muskogee, Oklahoma

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

I, Lucas Keck, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, having been duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND INVESTIGATOR BACKGROUND**

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am currently assigned to the ATF Muskogee Field Office in the Eastern Judicial District of Oklahoma. I am an investigative officer, or law enforcement officer, of the United States of America within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18. I have been employed by ATF since 2015, and prior to my employment with ATF I was a Special Agent with the United States Secret Service (USSS) from 2009 through 2015.

2. During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activity. This includes, but is not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) arson investigations; (d) homicide investigations; (e) undercover operations; (f) the execution of search warrants; (g) the consensual monitoring and recording of conversations; (h) electronic surveillance through the use of pen registers and trap and trace devices; (i) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (j) the handling and maintenance of evidence.

3. During my employment with the USSS, I conducted and participated in investigations for counterfeit currency, to include purchasing counterfeit currency with

confidential informants and undercover agents, identity theft investigations, credit card fraud, and bank fraud in both state and federal courts in the Southern District of Texas. During my employment with ATF and with the USSS, I have assisted other agencies and law enforcement, including the Drug Enforcement Administration (DEA), with investigations regarding firearms and narcotics.

4. The statements made in this affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; and (c) my training and experience.

5. For the reasons set forth below, I respectfully submit that there is probable cause to believe that the property that is the subject of this search warrant includes evidence of the following offenses: Title 18 U.S.C. § 1151 – Indian Country Defined; Title 18 U.S.C. § 1153 – Major Crimes in Indian Country; Title 18 U.S.C. § 81 – Arson in Indian Country; Title 18 U.S.C. § 1111 – Murder in Indian Country.

## JURISDICTION

6. This affidavit requests a search warrant for premises located at **27805 S. 170 Rd, Henryetta, OK 74437,** hereinafter referred to as the TARGET RESIDENCE. The TARGET RESIDENCE is in Okmulgee County, Oklahoma within the Eastern District of Oklahoma.

## FACTS IN SUPPORT OF PROBABLE CAUSE

7. On February 10, 2025, a residential fire occurred at 323 E. Trudgeon St., Henryetta, OK 74437. The residence is located in Indian Country on the Muscogee Creek Reservation, and within the Eastern District of Oklahoma. A victim, SY, died in the fire and was discovered by the Henryetta Fire Department. Two other residents were able to escape the fire.

8. While investigating the fire, the Henryetta Police Department and the State Fire Marshal obtained surveillance video from the Masonic Lodge, a building across the street from the fire scene, and discovered that a person is on camera setting fire to the residence at approximately 2:52am. The District 25 Violent Crimes Task Force was activated to assist in the investigation. ATF was contacted by both the D25 VCTF and the State Fire Marshal for assistance.

9. Law enforcement reviewed surveillance video from the Masonic Lodge, a building across the street from the fire, as well as other nearby video. Investigators noted a vehicle stop in the street near 323 E. Trudgeon, and a person exit the passenger side. The vehicle departs and the person approaches the residence. Shortly after the person steps on the porch a flash can be seen, then another flash, and a fire started. A person can be seen leaving the residence on foot as the fire grows and provides more light. The person departs east on Trudgeon St.

10. I have observed surveillance video of the fire. I noted the fire appears to start quickly on the porch underneath or near a window on the east side of the front porch. The fire flares and continues to burn, eventually engulfing the front of the residence. I have shown this video to Special Agent Chad Oubre, a Certified Fire Investigator (CFI) with ATF. SA Oubre's opinion, after watching the video, is an accelerant was used to initiate the fire.

11. Between approximately 2:52am and 3:10am, investigators observed, on surveillance video, the vehicle that dropped the suspect off travel by the fire several times. Investigators were able to follow the suspect walking east on Trudgeon St, observe the suspect walk across Highway 75, and enter the Quik Trip parking lot. The suspect is observed on the north side of Quik Trip near an entrance.

12. I observed multiple surveillance videos from the fire's location to Quik Trip. I noted the suspect wore a hooded garment, possibly a hoodie or jacket with a hood, that had a

3

unique point to the hood. This point was more pronounced than I normally associate with hoodies or hoods.

13. At Quik Trip, I observed the suspect stop near the north entrance. The suspect is in a lighted area and appears to watch west towards the fire. I can tell the suspect is wearing gloves, which appear red in the surveillance video. The suspect is wearing what appear to be boots, which on surveillance video are a lighter shade compared to the suspect's pants. When the suspect walks away from Quik Trip, the surveillance video shines on the back of the hoodie or jacket. The appearance is more like a water-repellant jacket than a clothe jacket or hoodie.



4

14.     When the suspect walks away from Quik Trip, the suspect appears to intentionally stay in dark areas, taking a longer route to walk from Quik Trip back towards Highway 75. I watched the suspect run while near Highway 75 and enter a vehicle that had turned on Highway 75, then executed a U turn, and stop to pick up the suspect. I believe by the manner in which the vehicle picks up the suspect and the manner in which the suspect is waiting, then running, for the vehicle, that the suspect is not in telephone communication with the person driving the vehicle. I did not observe on Quik Trip, or any other video, what appeared to be the suspect using a cellular telephone.

15.     On February 11, 2025, I interviewed PF, one of the residents who escaped the fire. PF said she woke up when her dog started barking and heard a loud pop on the porch. She got up and went towards the front room and observed the curtains on fire inside of the residence. PF was positive that the curtains were on fire when she saw them shortly after the pop, not the floor, chair, or other items inside. PF was positive the initial pop noise she heard was from outside of the residence and not inside.

16.     Through tips and family interviews, investigators learned that SY had been in a relationship with domestic violence. SY was involved in a criminal case against a former boyfriend, Kenny Joe FIELDS. SY would be testifying in court in approximately one month against FIELDS for domestic violence. Investigators were told that FIELDS and his children may be stalking SY. Investigators were told that one of FIELD's daughters had contacted SY recently and asked how much money it would take for her not to testify.

17.     Investigators were told a friend or employee of FIELDS, Brian SCOTT, may also be involved. I was told that SCOTT was observed by law enforcement near the fire scene on February 10, 2025, at approximately 5:00pm, and immediately told investigators that he had

nothing to do with the fire. Investigators noted this activity was odd, that SCOTT made this statement before they asked him any questions.

20. On February 14, 2025, Henryetta PD found SCOTT at his residence outside of Henryetta, at 27805 S. 170 Rd, Henryetta, OK. HPD described the residence as a travel trailer outside of town, with a burned trailer house also on the property. SCOTT agreed to accompany HPD to Henryetta for an interview.

19. At HPD, SCOTT provided a Muscogee (Creek) Nation Citizenship Identification Card. The card showed SCOTT has a roll number and is a member of the tribe by a quantum of blood.

20. I assisted with SCOTT's interview in Henryetta. During the interview, SCOTT told investigators that he had nothing to do with the fire and he was unaware of who was in the fire until told by others. SCOTT told investigators that his phone would show he was at his residence the entire night of February 9th and 10th. I noted that SCOTT was not wearing boots, but was wearing a coat that had a slick surface and an odd point to the hood, very similar to the garment I had observed on surveillance video's of the suspect after the fire was set on February 10, 2025.

21. SCOTT said he knew FIELDS and knew who SY was. SCOTT said FIELDS had previously paid him with user amounts of narcotics to attempt to damage vehicles, specifically SY's son, about 6 weeks prior. SCOTT said FIELDS had driven SCOTT to a location in Henryetta that FIELDS claimed was SY's son and told SCOTT to place bleach in the gas tank of the son's vehicle. SCOTT claims he didn't do this but told FIELDS he did.

22. SCOTT said FIELDS told him that if FIELDS went to jail over the upcoming court appearance that SCOTT should burn SY's son's house down, and that FIELDS claimed SCOTT would be "taken care of" if SCOTT did this. SCOTT correctly described SY's son's residence

and directions to get to the residence. SCOTT said he was asked by FIELDS to surveille SY, but claimed he never did. SCOTT said he was unaware that the residence that burned was SY's and was unaware of where SY lived until he learned she died in the fire. SCOTT claimed he did not know what SY looked like.

23. SCOTT admitted he spoke with FIELDS by cellular telephone on February 9, 2025, at around 6:30pm, but did not meet with FIELDS or discuss anything related to SY. SCOTT said he had walked from his residence towards town, stopped at a marijuana grow, took a bag of clippings from the trash can, and returned home. SCOTT said he intended to use butane to extract wax from the marijuana clippings and did not leave his residence that night. SCOTT told investigators multiple times that his cellular telephone would prove he was at his residence all night and not at the fire scene.

24. SCOTT agreed to take a polygraph test. One was administered during the interview on February 14, 2025. SCOTT continued to deny any involvement in the arson or homicide. However, the polygrapher noted SCOTT appeared deceptive regarding any questions with the fire.

25. I told SCOTT that I believed the coat he was wearing was the same coat the suspect is wearing on Quik Trip surveillance video on February 10, 2025, at approximately 3:00am. SCOTT told me he was at Quik Trip, then quickly stated he was there later in the day.

26. At the conclusion of the interview, SCOTT was released. I seized SCOTT's cellular telephone and his coat. He was driven home by HPD.

27. Based on my involvement in this arson and homicide investigation I believe SCOTT is the person who set the fire and is observed on surveillance video. I believe SCOTT has not disposed of the additional clothing items he was wearing on February 10, 2025, and those items will be found in his residence. I noted SCOTT is not employed and does not have disposable

income, with the current inclement weather I believe SCOTT will have maintained any gloves, footwear, or other garments he may have been wearing during the arson. In addition, SCOTT has contacted the Henryetta Police Department by cellular telephone since the interview on February 14, 2025. I believe SCOTT will be in possession of a cellular telephone he did not disclose to me during the interview that may be involved in the arson and homicide.

## CONCLUSION

28. Based upon my training and experience, I believe that probable cause exists to believe there has been a violation of Title 18 U.S.C. § 1151 – Indian Country Defined; Title 18 U.S.C. § 1153 – Major Crimes in Indian Country; Title 18 U.S.C. § 1111 – Murder in Indian Country; Title 18 U.S.C. § 81 – Arson in Indian Country.

29. I respectfully request that this Court issue search warrants for the TARGET RESIDENCE, located at 27805 S. 170 Rd, Henryetta, OK 74437 in Okmulgee County, Oklahoma within the Eastern District of Oklahoma, which is more fully described in **Attachment A**, as well as authorize the search of the aforementioned property for the items described in **Attachment B**.

*Lucas Keck*
Lucas Keck, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

SWORN to this 21st day of February 2025.

_____
United States Magistrate Judge

## ATTACHMENT A

The premises to be searched is located at 27805 S. 170 Rd, Henryetta, OK 74437, Okmulgee County, OK, Eastern District of Oklahoma, to include all residences, trailers, storage places, safes, garages, structures, storage buildings, and any automobiles which may be found within the curtilage of said suspected premises.

The premises is described as a travel trailer, tan or off white in color, with SHASTA marked on the side.





10

## ATTACHMENT B

1. Boots, muck boots, waterproof boots, or other footwear consistent with what the arson suspect was wearing on February 10, 2025.

2. Gloves, possibly red in color.

3. Garments or clothing consistent with clothing involved in a recent fire.

4. Additional electronic devices capable of communication through the internet or cellular service.